JPD:KDT 51716-35-61




IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREA M. CAINES, MAUREEN FRAWLEY and DANIEL E. HARDER,
Plaintiffs,

v.

VILLAGE OF FOREST PARK, EDWARD POPE and MICHAEL CODY,
Defendants.

Case No. 02 C 007472
Judge Schenkier

## MOTION TO DISMISS

Now comes the Village of Forest Park, through its attorneys, James P. DeNardo, Kristin D. Tauras and McKenna Storer, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for its Motion to Dismiss, states as follows:

## ALLEGATIONS

The Plaintiffs are police officers for the Forest Park Police Department. The Amended Complaint basically alleges that all three were subjected to inappropriate sexual remarks and/or conduct by Defendant, Edward Pope, the police chief, and Defendant Michael Cody, the deputy police chief.

Count I (by Andrea Caines), Count II (By Maureen Frawley) and Count III (by Daniel Harder) are directed against the Village and allege Sexual Harassment in violation of Title VII. Count IV (by Andrea Caines) and Count V (by Maureen Frawley) are directed against the Village, as well as Pope and Cody, and allege violation of 42 U.S.C. §1983. Counts VI through IX (by Andrea Caines and Maureen Frawley) are directed against only Pope and Cody and allege assault and battery. See Exhibit A, First Amended Complaint.



15

## ARGUMENT

The Village moves to dismiss Count III because Daniel Harder has failed to allege a cause of action for same-sex sexual discrimination. The Village moves to dismiss Counts IV and V because neither Pope nor Cody were the policy-making authority for the Village, or, in the alternative, were acting outside the scope of the policy of the Village at the time of the alleged incidents and, therefore, their conduct cannot be the basis for a Section 1983 claim. The Village also moves to strike the request for punitive damages in Counts I through V because the Plaintiffs are not entitled to punitive damages against a municipality, here the Village, under either Title VII or Section 1983.

### I. PLAINTIFF DAVID HARDER HAS NOT PLED A CAUSE OF ACTION FOR VIOLATION OF TITLE VII, SAME SEX DISCRIMINATION, THEREFORE, COUNT III SHOULD BE DISMISSED.

The U.S. Supreme Court's decision in Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 118 S.Ct. 998 (1998), is the seminal case on same-sex discrimination. In that case, the U.S. Supreme Court ruled on what conduct constituted same sex discrimination. While holding that same sex harassment is actionable under Title VII, it greatly curtailed the Seventh Circuit's prior liberal view of same-sex discrimination. In Doe v. Belleville, 119 F.3d 563 (7th Cir. 1997), the Seventh Circuit had suggested that same sex harassment that is "sexual in content" was always actionable, regardless of the harasser's sexual orientation, or motivations. The Oncale decision expressly overruled that portion of Belleville and reaffirmed its long-standing precedent that Title VII does not prohibit all harassment in the workplace; it is directed only at discrimination because of sex:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex. We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of

the other sex are not exposed.

Oncale , supra, 523 U.S. at 79; Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993).

The Supreme Court also identified the three situations that may give rise to a same-sex sexual harassment claim:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] ... because of ... sex."

Oncale, supra, 523 U.S. at 80-81. Since Oncale, the Fifth Circuit has found same sex sexual harassment to exist where: (1) the plaintiff can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual"; (2) demonstrate the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) offer direct comparative evidence about how the alleged harasser treated members of both sexes. La Day v. Catalyst Technology, Inc., 302 F.3d 474, 478 (5th Cir. 2002).

The Seventh Circuit has also held that same sex harassment is actionable under Title VII to the extent it occurs "because of" the plaintiff's sex. Sheperd, supra, 168 F.3d 998, 1107, citing Oncale, supra, 523 U.S. 75. Therefore, not even harassment based solely upon a person's sexual preference or orientation

is unlawful under Title VII. Spearman v. Ford Motor Co., 231 F. 3d 1080, 1084 (7th Cir. 2000). The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of another sex are not exposed. Holman v. State of Indiana, 211 F.3d 399, 402 (7th Cir. 2000) (finding no same-sex discrimination in response to a motion to dismiss where a male employee was continually touched and propositioned for sexual favors by a male supervisor where his wife, also and employee, was continually subjected to similar types of conduct). Thus, for Harder's claim to be viable, there must be evidence from which the fact finder could infer that he was harassed because he was a man. Shepard, supra, 168 F.3d at 1107.

In the present case, there is no evidence that the alleged comments were "discrimination because of sex." Harder alleges that Pope called him various homosexual terms and made reference to the size of his hands as indicative of the size of his penis; that Pope told him about his sexual escapades with various women and made comments about women's breasts; that Pope told him, while they played golf, that he had a "nice ass", "good legs", and "looked good in shorts", and physically pulled Harder around the shoulder and squeezed Harder's leg while riding in a golf cart. See Paragraph 83, Amended Complaint. These comments and actions do not state a cause of action for same sex sexual harassment under the three scenarios set forth in Oncale, supra, 523 U.S. 75, 80, and La Day, supra, 302 F.3d 474, 478.

First, there are no allegations Pope made 'explicit or implicit proposals of sexual activity' nor 'credible evidence that Pope was homosexual.' In fact, the majority of the allegations refer to Pope's continual reference to female anatomy and his desire for women. Second, there are no allegations that Pope was generally hostile toward members of his own gender in the workplace. Third, there are no allegations that Harder was subjected to different treatment merely because he was a man. At most, the allegations demonstrate gender horse play of the type that the Oncale Court suggested did not show sexual harassment. See Oncale, supra, 523 U.S. 75, 80; See also Spearman, supra, 213 F.3d 1080, 1084

(Harassment based on sexual preference is not actionable under Title VII.)

Accordingly, Count III should be dismissed.

## II. THE PLAINTIFFS HAVE NOT STATED A CAUSE OF ACTION FOR VIOLATION OF SECTION 1983 AND, THEREFORE, COUNTS IV AND V SHOULD BE DISMISSED.

In general, a municipality such as a Village cannot be held vicariously liable for the acts of its employees under Section 1983. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). Only when a municipality's policy or custom causes the constitutional deprivation is the municipality responsible under Section 1983. Monell, supra, 436 U.S. at 694; Vela v. Village of Sauk Village, 218 F.3d 661, 665 (7th Cir. 2000). Even though under notice pleading, plaintiffs are not required to give detailed facts in support of their claims, in a Section 1983 case, "boilerplate allegations of a municipal policy entirely lacking in any factual support that a [municipal] policy does exist, are insufficient to survive a motion to dismiss." Crandall v. City of Chicago, 2000 WL 688948, *3 (N.D.Ill. 2000). The Plaintiffs' Complaint fails to set forth a policy of sexual harassment.

### A. A Section 1983 Claim Cannot Stand Because Neither Cody Nor Pope Were The Policy Making Authority For The Village.

There are three situations in which a municipality can be held liable to have violated the civil rights of a person because of its policy: (1) where there is an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Vela v. Village of Sauk Village, 218 F.3d 661, 665 (7th Cir. 2000). In the context of sexual harassment, to state a claim of custom, policy or widespread practice, the plaintiff must, at a minimum, assert some factual basis to suggest that: (1) the defendant maintained an express policy of intentional harassment, (2)

defendants have a practice of subjecting employees to intentional sexual harassment, though unauthorized or unwritten, that is so widespread as to have the force of law or (3) that a person with final policy making authority made a deliberate choice to deny the plaintiff of her right to be free of sexual harassment. Figueroa v. City of Chicago, 1999 WL 163022, *6 (N.D. Ill. 1999).

**1. The Village Did Not Have An Express Policy of Intentional Harassment.**

The Plaintiffs have not alleged an express policy of intentional sexual harassment, nor could the Plaintiffs allege such a policy. The Village has, in effect since March 24, 1997, a written policy prohibiting sexual harassment in the work place. The Village of Forest Park Personnel Handbook forbids sexual harassment in the work place and sets forth express procedures for responding to sexual harassment complaints. See Exhibit B, Ordinance and Village Handbook pp. 4-7. The Ordinance implementing the Handbook stated: "The Personnel Handbook is intended to be the framework for employee conduct in preserving and protecting the health, welfare and safety of the people of Forest Park." Accordingly, the anti-sexual harassment policy set forth in the Handbook is the policy of the Village and, therefore, Section 1983 liability against the Village cannot be premised on an express policy of intentional harassment.

**2. There Are No Allegations of Fact that the Village Had a Custom or Practice of Subjecting Employees to Intentional Sexual Harassment.**

A municipal custom or practice requires proof that the policymaking officials knew of an established custom or practice and acquiesced in it. McNabala v. Chicago Transit Auth., 10 F.3d 501, 511 (7th Cir. 1993); Brandon v. Village of Maywood, 157 F.Supp. 2d 917, 933 (N.D. Ill. E.D. 2001). Furthermore, boilerplate language that the defendants' unlawful acts were so pervasive as to constitute a policy and practice of the Village is insufficient. Crandall v. City of Chicago, 2000 WL 688948 , *3(N.D.Ill. 2000). The Plaintiff has not demonstrated that the Village had a pattern or practice of sexual harassment.

As stated above, the Village had in effect as a matter of law, by Ordinance, a policy prohibiting sexual harassment in the work place, which has been in effect since March, 1997 and is still in effect. (See Ex. B). There are no allegations to show that the Village acquiesced in any change in that policy. Moreover, there are no allegations that the Village even had knowledge of the alleged harassment. According to the Plaintiffs' allegations, they only made their complaints known to the alleged harassers. They never made their complaints known to the Village Council, its Mayor or its Administrator. Without knowledge on the part of the Village, it cannot be said that the Village acquiesced in the alleged harassment.

**3. There Are No Facts To Demonstrate That Cody or Pope Were The Final Policy Making Authority.**

The plaintiff must allege that an official with final policy making authority made a discriminatory decision that constituted an act of official government. See Figueroa, supra, 1999 WL 163022, *6 . Whether a particular official has final policy making authority is a question of state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 924 (1988). Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority. Vela, supra, 218 F.3d 661, 665-66, wherein the Seventh Circuit upheld the dismissal of a claim for a violation of 1983 premised on sexual harassment that had been brushed aside by the chief of police and the city manager where the plaintiff had not demonstrated that Illinois law granted final policy making authority to either of the officers nor any delegation of such authority by the Village board. Furthermore, municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. Eversole v. Steele, 59 F.3d 710, 716 (7th Cir. 1995) The fact that a particular official — even a policy making official — has discretion in the exercise of a particular function does not, without more, give rise to municipal liability based on an exercise of discretion; the

official must also be responsible for establishing final government policy respecting the particular activity before the municipality can be held liable. Eversole, supra, 59 F.3d at 716, citing Pembaur v. Cincinnati, 475 U.S. 469, 478-80, 106 S.Ct. 1292 (1986).

The Plaintiffs have not alleged that Cody or Pope were the final policy makers nor could the Plaintiffs make such an allegation. As stated above, the Village Council had the authority to adopt a sexual harassment policy and, in fact adopted a sexual harassment policy. See Exhibit B.

Furthermore, the Ordinances relating to the roles of the Police Chief, Village Administrator and Mayor demonstrate that neither Cody nor Pope were final policy makers. See Group Exhibit C, various ordinances and municipal code. Ordinance 0-15-76 sets forth the responsibility of the Major. Under Ordinance 0-15-76, the mayor has jurisdiction and supervision over the police department. Municipal Code, Chapter 4, Article 1, Section 4-3 sets forth the duties of the Police Chief and states that the Chief has the general supervision of the administration of the police department and shall be "charged with the duty of protecting the rights of persons and property; and shall cause to be enforced, all ordinances of the Village." The Ordinances do not give the Chief (or one of his deputies) the right to engage in sexual harassment or even set policies with respect to sexual harassment. Indeed, this is made clear by the provision that the Chief is to enforce all Ordinances of the Village, including the Ordinance establishing the Handbook, wherein sexual harassment of employees is prohibited.

**B. A Section 1983 Claim Cannot Stand Because Cody and Pope Were Acting Outside The Scope Of The Policy Of Forest Park At The Time Of The Alleged Harassment.**

To hold the municipality liable, the agent's actions must implement rather than frustrate the government's policy. Auriemma v. Rice, 957 F.2d 397, 400 (7th Cir. 1992). In Auriemma, demoted police officers brought a Section 1983 claim against the city claiming that their demotions by a new police superintendent were racially and politically motivated. The city had in effect an ordinance applicable to

the police department unequivocally banning racial and political discrimination. The evidence demonstrated that if the superintendent did indeed promote on the basis of political and racial motivations, he was violating rather than implementing the policy of the City. Auriemma, supra, 957 F.2d at 401. Therefore, the Seventh Circuit affirmed judgment in favor of the City. Auriemma, supra, 957 F.2d at 401.

Similarly, in Mendoza v. Chicago Park District, 2002 WL 31155078 (N.D.Ill. 2002), the plaintiff had alleged that she had been subjected to pregnancy and gender discrimination. In that case, the park district had an express policy that it would not tolerate employment discrimination. The District Court held that the plaintiff's supervisors acted inconsistently with that policy and that they did not create a new policy but instead frustrated and violated the policy. Therefore, the District Court granted judgment in favor of the municipality. Mendoza, supra, *4. See also Taylor v. Carmouche, 214 F.3d 788, 791 (7th Cir. 2000) (City could not be held liable under Section 1983 for alleged violations of the First Amendment where the supervisors violated rather than implemented the City's personnel policy.); McGreal v. Ostrov, 2002 WL 1784461,*3 (N.D.Ill. 2002) ("A policy maker who acts outside of the rules does not thereby set new policy."); Crandall v. City of Chicago, 2000 WL 688948,*3 (N.D.Ill. 2000) ("Actions that frustrate City policies and practices cannot be the basis for holding that government liable; rather, to state a 1983 claim, the agent's actions must implement."); Marzec v. Village of Crestwood, 1990 WL 171772,*7 (N.D.Ill. 1990) ( "If plaintiffs' rights were violated by towing ordered by the Chief contrary to the policy, the Village is not responsible....")

In the present case, the Village had a written policy in effect prohibiting sexual harassment. See Exhibit B. To the extent that Cody and Pope were engaging in sexual harassment, they were acting outside the scope of their authority and contrary to that policy. Accordingly, even if Cody or Pope were policy makers for the Police Department, their conduct still cannot subject the Village to liability under 1983.

## III. THE PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES AGAINST THE VILLAGE UNDER EITHER TITLE VII OR SECTION 1983.

The Plaintiffs have requested punitive damages under each of their counts for violations of Title VII and Section 1983. Punitive damages are not available against a governmental agency. This is true under either Title VII or 42 U.S.C. Section 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981); 42 U.S.C. Sec. 1981(a)(1). Accordingly, the Plaintiffs' requests for punitive damages should be stricken.

Respectfully submitted
VILLAGE OF FOREST PARK

James P. DeNardo
One of Their Attorneys

#04927
James P. DeNardo
Kristin D. Tauras
McKenna, Storer
33 N. LaSalle Street, Suite 1400
Chicago, Illinois 60602
(312) 558-3900

# SEE CASE FILE FOR EXHIBITS