# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7472 | **DATE** | 6/30/2003 |
| **CASE TITLE** | Andrea M. Caines, *et al.* vs. Village of Forest Park, *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** The Court grants the Village's motion to dismiss ____ as to Count III of plaintiffs' second amended complaint, and denies the motion as to Counts IV and V. The Court also denies the plaintiffs' motion to strike [doc. # 29] as moot. The Village shall file its answer as to Count III by 07/18/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | JUN 3 0 2003 date docketed | 36 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | JJK — courtroom deputy's initials | 03 JUN 30 AM 11:23 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREA M. CAINES, MAUREEN FRAWLEY ) <br> and DANIEL E. HARDER, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> VILLAGE OF FOREST PARK, ) <br> EDWARD POPE and MICHAEL CODY, ) <br> ) <br> Defendants. ) | No. 02 C 7472 <br> Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

DOCKETED
JUN 3 0 2003

In a thirteen-count second amended complaint, Andrea Caines, Maureen Frawley and Daniel Harder, all police officers with the Village of Forest Park ("the Village"), assert a variety of federal and state law claims against the Village, Edward Pope, the Village Chief of Police, and Michael Cody, the Village Deputy Police Chief. In Counts I through III Ms. Caines, Ms. Frawley and Mr. Harder respectively, assert claims of sex discrimination against the Village under Title VII. Ms. Caines and Ms. Frawley, respectively, bring Counts IV and V asserting claims of sex discrimination and retaliation against all defendants under 42 U.S.C. § 1983. In Counts VI and VII, Ms. Caines alleges assault against Messrs. Pope and Cody, respectively. In Counts VIII and IX, Ms. Caines alleges battery against Messrs. Pope and Cody, respectively. In Count X, Ms. Caines alleges intentional infliction of emotional distress against Mr. Cody. In Counts XI through XIII, Ms. Caines, Ms. Frawley and Mr. Harder, respectively, allege intentional infliction of emotional distress against Mr. Pope.

---

[1] On November 25, 2002, by the consent of the parties and pursuant to 28 U.S.C. § 636(c), the case was reassigned to this Court for all proceedings, including the entry of final judgment (doc. # 7).

36

The Village of Forest Park answered Counts I-II of the second amended complaint (doc. # 24), but has moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Counts III, IV and V (doc. # 23). The Village moves to dismiss Count III for failure to allege a cause of action for same-sex sexual discrimination, and Counts IV and V for failure to set forth a policy of sexual harassment under Section 1983. For the reasons set forth below, the Village's motion to dismiss is granted as to Count III, but denied as to Counts IV and V.

## I.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the lawsuit. *Triad Assocs. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1990). For purposes of reviewing the motion, we must take all the plaintiff's well-pled allegations as true. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.1992). The Court must also view the plaintiff's allegations in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047 (1986). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Triad Assoc.*, 892 F.2d at 586.

## II.

We begin our analysis of the Village's motion to dismiss with Mr. Harder's claim in Count III for same-sex sexual harassment. Title VII plainly protects individuals against same-sex sexual harassment in the workplace. "If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of

the same sex." *Oncale v. Sundower Offshore Services, Inc.*, 523 U.S. 75, 79 (1998). *See also Hamm v. Weyauwega Milk Prods., Inc.*, No. 02-2529, 2003 WL 21362198, at *3 (7th Cir. June 13, 2003). A valid claim for same-sex sexual harassment under Title VII exists where plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimin[ation]* ... because of ... sex ." *Oncale*, 523 U.S. at 81 (emphasis in original).

In *Oncale*, the Supreme Court explained that there are several different ways that a plaintiff might prove a claim of same-sex sexual harassment: (1) where there is credible evidence that the harasser is homosexual and that he or she made "explicit or implicit proposals of sexual activity"; (2) where there is credible evidence that the plaintiff is being harassed "in such sex-specific and derogatory terms by another [person of the same gender] as to make it clear that the harasser is motivated by general hostility to the presence of [that gender] in the workplace"; or (3) where there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." 523 U.S. at 80-81. Whatever the path used, however, a plaintiff must show that the discrimination was "because of . . . sex." *Id.*, at 81. Therefore, a same-sex sexual harassment claim will not lie where the defendant inflicts inappropriate conduct based on sexual orientation, *Hamm*, 2003 WL 21362198, at *3, or on men and women alike, without regard to gender. *Holman v. State of Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). "Title VII does not cover the 'equal opportunity' or 'bisexual' harasser, then, because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly). *Id.* (emphasis in original).

In this case, Mr. Harder does not assert that Mr. Pope's conduct was intended as a means of proposing sexual activity with him; indeed, Mr. Harder's brief in opposition to the motion to dismiss

3

specifically disavows that theory of same-sex sexual harassment (Pls.' Mem. at 4). Rather, Mr. Harder pursues the other avenues for stating a claim of same-sex sexual harassment identified by *Oncale*. He claims that Mr. Pope's conduct against him was motivated by "antipathy toward men in the workplace," and that the conduct directed toward Mr. Harder was "of a different nature and . . . degree than the harassment and discrimination experienced by FRAWLEY, CAINES or other female employees of the Department" (Sec.Am.Compl., ¶¶ 102-103). Mr. Harder's brief further explains this theory that is pled in the complaint: he asserts that while Mr. Pope's conduct toward Ms. Caines and Ms. Frawley were intended as a means of procuring sex, his actions toward Mr. Harder were motivated not by a desire for a sexual liaison but rather "were intended to emasculate and humiliate Harder because he is a man and because Pope wanted to belittle men he perceived as threats" (Pls.' Mem. at 4).

We are not persuaded that this asserted distinction is sufficient to take Mr. Harder's claim out of the "equal opportunity" harasser portrait of Mr. Pope that is plainly painted by the plaintiffs' extensive allegations in the second amended complaint. While federal law generally requires only notice pleading, *see* Fed. R. Civ. P. 8(a), a plaintiff who elects to plead extensive facts – as the plaintiffs here have done – runs the risk that in doing so they will "plead themselves out of court" by asserting factual material that undercuts the more general allegations they have made. *Thomson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 758 (7th Cir. 2002); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998). Here, the detailed allegations of Mr. Pope's conduct portray an individual who directed vulgar and obscene conduct of a sexual nature toward the male and female defendants alike (*see, e.g.*, Sec.Am.Compl. ¶¶ 50 (Caines), 76 (Frawley), and 101 (Harder)). The detailed factual allegations in these and other

4

paragraphs of the complaint are inconsistent with, and undermine, the more general and conclusory assertions that Mr. Pope's conduct was the result of a general antipathy toward men in the workplace or that the conduct he experienced was of a different nature and degree than that experienced by female employees. The facts alleging that Mr. Pope's conduct was directed to both male and female employees undercuts the claim that it resulted from a "general antipathy toward men." And, those same factual assertions also undermine any claim that Mr. Pope treated male employees worse than female employees, much less that he did so on the basis of gender.

Nor is Mr. Harder's claim improved by the gloss on the pleadings that he attempts to supply in his brief, which we may consider in assessing the motion to dismiss. *See Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir. 1985); *Hrubec v. Nat'l. Railroad Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992). If, as Mr. Harder claims, Mr. Pope engaged in the alleged offensive conduct toward him because Mr. Pope perceived Mr. Harder to be a "threat," that might show a number of things about Mr. Pope – but not that he discriminated against Mr. Harder on the basis of sex. Mr. Harder's theory of Mr. Pope's motivation undercuts the claim that Mr. Pope acted out of a general antipathy toward men; under Mr. Harder's theory, Mr. Pope harassed Mr. Harder because he was a man who posed a "threat," and thus would have no reason to harass a man who was not a threat.

The second amended complaint alleges that both male and female employees were subject to sexual harassment. These allegations undermine Mr. Harder's attempt to claim that Mr. Pope harbored a general hostility toward men alone, or that he targeted men for more extreme conduct. The allegations place Mr. Pope in the category of the "equal opportunity" harasser and, for this

5

reason, Mr. Harder's Title VII claim in Count III, based on same-sex sexual harassment, must be dismissed.

### III.

We now turn to the sex discrimination claims in Counts IV and V, alleged by Ms. Caines and Ms. Frawley against all of the defendants under 42 U.S.C. § 1983. The Village – but not the individual defendants – moves to dismiss these claims. We begin with an analysis of the law governing the treatment of Section 1983 claims against a municipality.

### A.

At the outset, the Court notes that "[a] local governmental unit is subject to suit under 42 U.S.C. §1983." *McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995). Of course, it is well-settled that a municipality may not be held vicariously liable for the acts of its employees under Section 1983. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 659 (1978). Rather, "[t]he case law has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) An express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute 'custom or usage' with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'" *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-735 (7th Cir. 1994). *See also Monell v. Department of Soc. Servs.*, 436 U.S. 658, 659 (1978) ("...Congress did not intend a local government to be held liable solely because it employs a tort-feasor--in other words, a local government cannot be held liable under § 1983 on a *respondeat superior* theory.") (*internal citations omitted*); *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) ("Municipalities are answerable only

for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents").

With regard to the pleading requirements for a Section 1983 claim against a municipality, the rule is that "[o]rdinary notice pleading is sufficient to bring a civil rights action against governmental entities under § 1983." *Figueroa v. City of Chicago*, No. 97-C-8861, 1999 WL 163022, *5. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 165-66 (1993); *Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir.1997). "The plaintiff's complaint must, however, provide 'fair notice' of the claim and 'the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Jackson v. Marion City*, 66 F.3d 151, 152 (7th Cir.1995); *Baxter v. Vigo City Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994).

With respect to Counts IV and V, the Court must decide whether Ms. Caines and Ms. Frawley have alleged enough to state a Section 1983 claim against the Village. Ms. Caines and Ms. Frawley do not contend that the Village maintained an express policy that permitted the harassment that they allege; rather, they contend that the second amended complaint sufficiently alleges both (1) a widespread practice, and (2) that their injuries were caused by the acts of a person with final policy making authority (*see* Pls.' Mem. at 8). We focus on the first point, which we find dispositive of the motion.

**B.**

We begin by summarizing the allegations of the second amended complaint that relate to the claim by Ms. Caines and Ms. Frawley of a widespread practice of sexual harassment. The plaintiffs squarely assert that the Village "had a general, widespread, ongoing, permanent, well settled and accepted pattern and practice of not responding promptly and adequately . . . to . . . complaints by

7

officers of harassment and/or discrimination and further of retaliating against officers who complained . . ." (Sec.Am.Compl. ¶ 149; *see also* ¶¶ 147, 157, 159). In support of this assertion, the plaintiffs further allege that the harassment they experienced also was "routinely imposed on other female employees" of the Village (*id.* ¶¶ 57, 83). The plaintiffs claim that this harassment occurred within the police department notwithstanding the Village's written policy prohibiting sexual harassment, because Mr. Pope made it plain that he considered the police department to be exempt from that policy: Mr. Pope allegedly told police department employees that he "tell[s] the Mayor what to do" and that "the Mayor works for me"; prohibited employees from complaining to anyone in the Village outside the police department about alleged harassment; and threatened retaliation against anyone who did so (*id.* ¶¶ 63-64, 89-90).

The plaintiffs also allege that the Village Mayor knew or should have known of Mr. Pope's sexual harassment but was deliberately indifferent to it (Sec.Am.Compl. ¶¶ 67, 93). The plaintiffs assert that the Mayor and the Village Administrator maintain their offices on the opposite side of the same building that houses the police department (*id.* ¶ 64), thus implying that this proximity would place those officials in a position to know of the allegedly pervasive sexual harassment that was occurring. In addition, the plaintiffs allege that the Mayor had been made aware of a specific complaint about Mr. Pope in 1999 (*id.* ¶ 64), and that the Village Administrator learned of Ms. Caines's complaint of sexual harassment in August 2002 (*Id.* ¶ 72). Ms. Caines further asserts that the Village's investigation into her complaint was a sham, and that she was retaliated against for having made the complaint (*id.* ¶¶ 72-74). Ms. Frawley alleges that her complaints about sexual harassment were ignored; that she suffered retaliation after she complained about sexual harassment,

when she was given a disciplinary reprimand that was not warranted; and that she was threatened with termination if she persisted in her complaints (*id.* ¶¶ 78, 95-98).

In assessing whether these allegations state a claim, we return to the well-established principle that the "plaintiffs in a § 1983 case against a municipality are required to comply only with the conventional standards of notice pleading; they are not required to meet any heightened pleading standard." *Sledd v. Lindsay*, 102 F.3d 282, 288-289 (7th Cir. 1996) (quoting *Leatherman*, 507 U.S. at 165). In *Sledd*, the appeals court reversed the district court's dismissal of a Section 1983 claim against a municipality where the complaint alleged that the City of Chicago and its police department maintained a "code of silence" whereby police officers would not report other officers who committed unconstitutional acts; that only 1.5 percent of excessive force complaints against officers were sustained, whereas many more had merit; and that this encouraged officers to use excessive force because they knew it unlikely that they would be held accountable. 102 F.3d at 287. The Seventh Circuit held that, even though the complaint did not "identify specific factual patterns" to support the allegations, "it was error to dismiss this part of the case solely on the pleadings." *Id.* at 289.

In this case, as in *Sledd*, the Court finds that the second amended complaint goes beyond a mere conclusory allegation of a widespread practice, and gives the Village fair notice of the basis for that allegation. The plaintiffs allege that they suffered a long and pervasive course of sexually harassing conduct. Although (as in *Sledd*) the plaintiffs here do not identify specific other women who were harassed or the details of the harassment they allegedly experienced, they do allege that other women were subjected to similar harassment. Moreover, the plaintiffs allege that Mr. Pope made it clear to all in the police department that the Village's written policy against sexual

9

harassment would not be enforced, and threatened retaliation against those who sought to do so; indeed, Ms. Caines and Ms. Frawley both allege that they suffered specific forms of retaliation when they made complaints. What's more, the plaintiffs allege that Mr. Pope stated that the Mayor reported to him, and that he (and not the Mayor) called the shots with respect to matters within the police department, which – giving the plaintiffs the benefit of all reasonable inferences from the allegations, as we do on a motion to dismiss – can be read as alleging that the Mayor had delegated Mr. Pope absolute authority to run the department and thus, at a minimum, was deliberately indifferent to the sexual harassment that allegedly was occurring. And, the plaintiffs allege that the Mayor and/or the Village Administrator knew of complaints about Mr. Pope's conduct and, with respect to Ms. Caines's complaint, that the Village Administrator participated in retaliating against her.

We have considered the Village's argument that the allegations concerning a widespread practice are too conclusory to pass muster, but find it unpersuasive. In support of this argument, the Village relies on several cases that involve appeals from jury trials and summary judgment rulings, and thus do not speak to the nature of allegations sufficient to survive a motion to dismiss. *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002); *Vela v. Village of Sauk Village*, 218 F.3d 661 (7th Cir. 2000); *McNabola v. Chicago Transit Authority*, 10 F.3d 501 (7th Cir. 1993). Another case relied upon by the Village, *Crandall v. City of Chicago*, No. 00 C 0014, 2000 WL 688948 (N.D. Ill. May 24, 2000), is factually inapposite. In that case, the district court dismissed a Section 1983 claim where the plaintiff complained of "one isolated incident" that was particular to the plaintiff, and "[a]side from the inclusion of boilerplate language, [the] complaint does not recount any pervasive or continuous conduct." *Crandall*, 2000 WL 688948, at *3. By contrast, here the plaintiffs allege

10

multiple acts of sexually harassing conduct occurring over an extended period of time; that others suffered similar harassment; that Mr. Pope told employees in the department that the Village's policy forbidding sexual harassment had no application to the police department and threatened those who tried to invoke; that the plaintiffs suffered retaliation for invoking the policy, and that senior Village officials knew or were deliberately indifferent to the harassment, and even participated in retaliation against Ms. Caines. These allegations present a far different case than that presented in *Crandall*, and warrant here a different result than that reached by the *Crandall* court.[2]

The Village's other attacks on the "widespread practice" claim are equally unavailing. *First*, the Village claims that the plaintiffs' claim of a practice of tolerating sexual harassment is undermined by their allegations that when Ms. Caines complained, the harassment stopped and an investigation was commenced (Village Mem. at 9). However, the plaintiffs squarely allege that the investigation commenced as a result of Ms. Caines's complaint was a sham that was intended to retaliate against her for making the claim; and, that no one investigated Ms. Frawley's complaints, but only retaliated against her for making them. Read in context, there is no inconsistency in plaintiff's allegations on this point.

---

[2] The Village also cites *McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir. 1995), which affirmed the dismissal of a Section 1983 claim based on a purported widespread practice. In that case, the plaintiff had lost his employment with the City of Chicago after a hearing by the Personnel Board. The plaintiff alleged that his job loss was pursuant to a practice and custom of the Personnel Board to be biased against employees and in favor of the City in such hearings. To support this allegation, the plaintiff alleged the "won-lost" record of employees in such proceedings during a two-year period, which was far worse than the won-lost record of union employees whose hearings took place before neutral arbitrators (who allegedly lacked the bias against employees) instead of the Personnel Board. The appeals court affirmed the dismissal of this claim, finding that the statistics cited were "insufficient to satisfy even the loose requirements of notice pleading." 60 F.3d at 383.

We believe the allegations in this case are more detailed, and more specific, than those found inadequate in *McTigue*. We also note that there is some tension between the Seventh Circuit's decision in *McTigue* that the statistical allegations were insufficient to save the Section 1983 claim from dismissal, and the appeals court's acceptance of the statistical allegations as a basis for reversing the dismissal of a Section 1983 claim in *Sledd* – which did not discuss or cite *McTigue*.

11

*Second*, the Village claims that there are no allegations that the Village had knowledge of the harassment (Village Mem. at 9-10). We read the allegations of the second amended complaint differently. It is plain that the plaintiffs allege that the Village Administrator knew of the alleged harassment and was a participant in the alleged scheme of retaliation. The plaintiffs further allege that the Mayor knew at least of an earlier complaint against Mr. Pope, and the allegations concerning Mr. Pope's statements of this authority vis-a-vis the Mayor can be read as asserting knowledge – or deliberate indifference – on the Mayor's part. Finally, we note that the alleged pervasiveness of the harassment itself can give rise to an inference of knowledge. "The longstanding or widespread nature of a particular practice would support the inference that policymaking officials 'must have known about it but failed to stop it.'" *McNabola*, 10 F.3d at 511 (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

*Third*, the Village asserts that it cannot be held liable because, to the extent that they engaged in the conduct alleged, Messrs. Pope and Cody were acting contrary to the Village's written anti-sexual harassment policy (Village Mem. at 12-13). We view this argument as an invitation to conclude that the Village's written police forbidding sexual harassment policy was in practice implemented by the Village, and to reject the allegations of the second amended complaint that this was not so. That is not a conclusion that the Court may make on a motion to dismiss.

In sum, we hold that the allegations of the second amended complaint are sufficient to state a Section 1983 claim against the Village based on the allegation of a widespread policy. Accordingly, the Court denies the motion to dismiss Counts IV and V.[3]

---

[3] The Village also argues that the plaintiffs cannot establish the that Mr. Pope was a final policymaker, relying on a municipal ordinance delineating the respective roles of various public officials. The plaintiffs move the Court to strike the ordinances, on the ground that they are materials outside the pleadings, that may not be considered on a motion

12

## CONCLUSION

For the foregoing reasons, the Court grants the Village's motion to dismiss (doc. # 7) as to Count III of plaintiffs' second amended complaint, and denies the motion as to Counts IV and V. The Court also denies the plaintiffs' motion to strike (doc. # 29) as moot. The Village shall file its answer to Count III by July 18, 2003.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: June 30, 2003

---

to dismiss (doc. # 29), and that in any event the Section 1983 claims survive even when considering the ordinance. The parties have spilled substantial ink on this point (Village Mem. at 10-12, Pls.' Mem. at 11-15, Village Reply at 12-16).

The ordinance relied upon by the Village would appear to qualify as a public record, which the Court could judicially notice. *See Toney v. Burris*, 829 F.2d 622, 627 (7th Cir. 1987) (citations omitted) (stating that the rule requiring federal courts to take judicial notice of statutory or common law of any state without pleading or proof "applies with equal force to 'matters of public record such as state statutes, city charters, and city ordinances'"). However, what the ordinance says about the relative responsibilities of the Mayor, the Village Administrator and the Chief of Police does not necessarily answer the question of whether, in practice, certain responsibilities were delegated. *Vela*, 218 F.3d at 666, quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, . . ."). Because Counts IV and V survive in any event based on the claim of a widespread practice, we find it unnecessary to resolve this argument at the present time, but instead will allow the parties to develop a more complete factual record on the policymaker issue. As a result, we deny the plaintiffs' motion to strike (doc. # 29) as moot.